Et al. v. Pillar Life Settlement Fund. Here first, Mr. Brent Perry. Good morning, Your Honors. May it please the Court. My name is Brent Perry. I represent the Pillar Life Settlement Funds and Evergreen Life Plan Funds. As a result of the class action settlement agreement in this case, my clients have been divested of personal property, 5% of their Life Settlement Fund interests, and all of their tort and contract claims against Life Partners. Also as a result of the settlement, the funds are now defendants in a lawsuit, Creditors Trust v. Black Diamond Life Plan Fund No. 164152, in which a number of the tort claims, specifically fraudulent transfers and Texas Securities Act violations, are claims that were assigned by investors to the Creditors Trust and that were by co-plaintiffs in the class action settlement. Although the Creditors Trust defends the class action settlement agreement on the grounds that injunctive and declaratory relief predominate over incidental monetary relief, the Creditors Trust brought a $600 million claim against Brian Pardo and Scott Peden based on these assigned claims that are also asserted against my clients. As the Supreme Court strongly implied in Wal-Mart v. Dukes, there is a serious possibility that the absence of notice and opt-out violates due process even where monetary claims do not predominate, and that was speaking in reference to this Court's decision in Allison v. Sitko. When the appellees, both the Creditors Trust and the class counsel, defend the agreement, they are shoehorning individual damages actions into a class action construct because of the incentives that this Court predicted in Boland v. Sears Roebuck in 2000. Judge Lynn's opinion in Turnboe v. Life Partners, a 2013 Westlaw District Court opinion, contains both the best explanation of the facts at issue as well as the best analysis of why the individual claims released and assigned and at issue in this class action are not suitable for class action certification even under Rule 23b-3, much less under the stricter provisions of 23b-2. Mr. Perry, overarching all of this is the fact that there was a reorganization plan and as at the time of the briefs being filed, it has been substantially consummated. Obviously, a lot of time has passed since the briefs were filed. For example, your brief was filed, let's see, in December 14, almost a year ago, and explained to us why this appeal isn't moot based on our Court's well-established precedent that you didn't seek to stay the reorganization plan. It's been substantially, if not completely, consummated. So why isn't this moot? The class action settlement agreement in paragraphs 39 and 40, first of all, it's a separate action and this Court has never found equitable mootness in an action separate from the underlying bankruptcy case. And second, the relief that we're seeking here is specifically provided for in the class action. Paragraphs 39 and 40, I believe the record site is 1096. And then thirdly, the class, I'm sorry, the bankruptcy court cannot do anything that divests this court of jurisdiction. The third standard for equitable mootness is whether relief requested would affect the rights of the parties not before the court or the success of the plan. And the fact is, in this case, all of the parties to the reorganization are before the court, as a matter of fact. And in the success of the plan, all of the money that has been paid out so far has been paid to people who were entitled to it before the plan was consummated. And there is no money that would have to be returned or reallocated as a result of this. The interests that we seek are all returnable to us at this point. And as a result, there's no reason to apply. Are the funds returnable to you from other parties? Not from other parties, from the creditors' trust. They have 5 percent of our life settlement investments, and they have our claims and causes of action. And those have not been reallocated. And so, I mean, in the Pacific Lumber case, Judge Jones made the point that Federal courts should proceed with caution before declining review of constitutional rights under a judge-created abstention doctrine. And our appeal here involves substantial issues of due process and takings. Why didn't you seek to stay the implementation of the reorganization plan? For two reasons, Your Honor. One, I believed it would be futile. And, two, it wasn't required under the terms of the Class Action Settlement Agreement. And I would add that as this Court wrote in In Re Scopac, which succeeded the Pacific Lumber case, the Court noted that adverse appellate consequences were foreseeable to those who opted to press the limits of bankruptcy confirmation and other rules. And this class action most definitely presses the limits of a 23b2 class. And so the consequences were written into the Class Action Settlement Agreement. I would additionally argue that res judicata does not apply to this action because what the appellees argue in this case is essentially equitable mootness masquerading as res judicata. The bankruptcy court merely adopted the Class Action Settlement Agreement. They did not independently adjudicate it, which distinguishes it from this Court's ruling in Republic Supply v. Shoeff. You didn't appeal that either. What's that? You didn't appeal the bankruptcy confirmation order. No, we did not. So you're stuck with it. We're not stuck with it because, again, paragraphs 39 and 40 contain the remedy that we're seeking in this. It provides for the opportunity to reverse what happened in the reorganization, what happened as a result of the class action settlement. I mean, this is a separate class action. It was something over which the bankruptcy court did not have or decided that it did not have jurisdiction. In fact, it didn't because it adjudicates personal tort and contract claims that would otherwise not be the jurisdiction of the bankruptcy court. And, again, I would point out that there are no assets of the estate that have been paid to any creditor or investor that would have to be returned as a result of this class action being overturned. This is a unique and, in fact, concerning application of a class action. We could not find any other case reported anywhere where someone had attempted to use a bankruptcy or a class action to shoehorn it into a bankruptcy reorganization. And it is we did consider this issue and it did not because the class action settlement agreement provided its own remedy and I would quote. Okay. Referring to the confirmation order in this case, it says on paragraph 39, if the confirmation order is modified, reversed, or vacated on appeal, then the parties or parties adversely affected by or who oppose such refusal to provide or affirm the requested relief, modification, vacation, or appeal shall each in their sole discretion have the option to rescind this settlement agreement in its entirety. And then it says. But, again, you just on the overarching surface rescind this settlement agreement, but after the agreement has been consummated through these proceedings, that's just a little difficult to comprehend. I agree and I didn't create this situation. I could not come up with any reason why we were required to appeal both when one, when the court did not have jurisdiction of this class action. And the fact is that the adverse consequences of the class action, of the class action being appealed, were known at the time the court incorporated it into the bankruptcy reorganization. And it is because, again, this is a unique situation, because our interests are there and can be returned as a result of this class action settlement. When you say interest, I know you want your five percent, something about five percent, but what are your interests that you want returned? We want our five percent returned and we want our. Are we talking about a right to five percent or are we talking about a monetary sum equal to five percent? We're talking about a five percent settlement interest that has a face value of a little over two million dollars. Where is that going to come from? It's going to come from the position holder's trust that has given us a position holder's trust certificate in return for the five percent continuing position holder contribution, which is described in the class action settlement agreement. So you're saying that two million dollars is sitting somewhere ready to be returned to you? Yes, it is. There is a position holder's trust that is being used to essentially as operating capital. But the vast majority of the position holder's trust is made of people who contributed their entire life's settlement interests through the settlement agreement. So individuals are going to have to pay this? Individuals are going to have to pay this? No, Your Honor. It's created by individuals who, whatever you say. No, Your Honor. There were about 20,000 investors for life partners and a substantial majority of the individuals created, contributed their whole interest to the position holder's trust. But we all have a divisible portion of it. It's more or less like a share of stock. This is returning our share of stock to us, as well as our claims, which could not properly be assigned in a class action, our tort and contract claims in a Rule 23b-2 class action. The Texas Supreme Court said it wasn't security, right? They did, Your Honor. That occurred several months after the bankruptcy was filed, and it would only declare it a security within Texas. And this company operated nationwide, and for the most part, we operated under the 1996 D.C. Circuit opinion, which found that these were not securities under the Howery test. And is your position that the money is in trust and would be easily refundable or the interest would be transferred back, is that contested? I would imagine that it is, but it is a fact. It seems like you would know. All these lawyers sitting here. Yes, Your Honor. I mean, we have a position holder's trust certificate, which can be exchanged for our 5%. That's not contested. I don't imagine that it is. I don't imagine they want to give it back to us. No, I don't think so. And when I referred to contested, that's what I was referring to. In addition, our claims and causes of action can be returned to us from whom they were wrongly deprived. I recognize the difficulties of this situation. We would be in essentially the same procedural posture had we appealed the class action. We would just have two cases on appeal rather than one, addressing the primary issue that is addressed in this class action settlement agreement, and that is whether the individuals can be required to give up their individual tort and contract claims and other personal property without an opt-out. And because the class action settlement agreement provides its own remedy, we exercise that remedy and are here or exercise our right to appeal in that case and are here before the court. This court has only decided one case since the Walmart v. Dukes opinion came out, and that being the Texas Family Protective Services case in which the court found the class lacked cohesiveness, and the court set a new standard which said that class members must have been harmed in essentially the same way an injunctive relief sought must be specific. And this court dropped the monetary predominant standard more or less in that case. The injunctive relief sought in this case was nowhere near specific. It is certain that this case fits within the standard, within this court's standard denying or reversing certification of a class under Rule 23b-2. We particularly in the trial court requested the right to opt out, and we're not granted that right. I would note finally, and I understand that it's a concern for the court, but the court has never found equitable mootness in a case involving – in a case that wasn't a direct appeal of a bankruptcy plan, and I could not find in a search of the United States cases any case where equitable mootness had been used separate from the bankruptcy plan. I'll give back my last minute. Thank you. You have time on your button, Mr. Perry. Mr. Cradiville. Good morning, Your Honors, and may it please the Court. My name is Chris Cradiville. I'm here with Michael Napoli from the Dyke-McCox Smith Firm, on behalf of the Defendant Appellee, Reorganized Life Partners, Incorporated, and the LPI Position Holder Trust with Mr. Eduardo Espinosa as the trustee, and I would note that Mr. Espinosa is here in the courtroom today. Your Honors, I think, Judge Barksdale, you've put your finger on the key issue here, and that is mootness, equitable mootness, legal mootness, and res judicata. Those are three threshold doctrines that these appellees must overcome in order to reach the merits of their challenge under Rule 23b-2, and I would respectfully suggest to the Court they've come nowhere near clearing those hurdles of legal mootness, equitable mootness, and res judicata. And I'll cut right to the chase, which is the flagship argument that counsel has raised to try to escape those doctrines are Paragraph 39 and 40 of the settlement agreement as approved by Judge McBride in the District Court and as incorporated into the bankruptcy plan of reorganization in a subsequent and unappealed order by Judge Nelms. Now, Paragraph 39 and 40 both speak in terms of parties, and parties— I'm sorry. I'm sorry to interrupt you, but repeat what you just said. You said Judge McBride approved the class settlement and then incorporated it into the bankruptcy order. Yes, Your Honor. The approval, the final judgment in this case was signed by the District Court by Judge McBride, so there's no question of bankruptcy jurisdiction there. The bankruptcy court subsequently, under a separate case number, separate order, that's not appealed and not before this Court today, entered a plan confirmation order. Right. That plan confirmation order has as its linchpin the District Court's approval of this class settlement. And that linchpin term is not mine. It's a term you'll find in the appellant's brief. It is the linchpin of the reorganization, the successful reorganization of life partners, which, as Your Honor noted, is now almost a year in. But to paragraph 39 and 40, which counsel suggests provide a get-out-of-jail-free card, they do not. Parties is a defined term, and these PELAR appellant objectors are not encompassed within that definition of parties under the settlement agreement. Indeed, the definition of parties under the settlement agreement is confined to the lead plaintiffs, class counsel, the Chapter 11 trustee, subsidiary debtors, and the unsecured creditors committee. You'll note that that does not include objectors, including the PELAR objectors, today appellants. And that settlement agreement is at several places in your consecutively paginated record. One place it can be found is 5756. I would urge the court to just simply take a look at the definition of parties to see that it does not include these appellants. And I think at that point, legal mootness, equitable mootness, and res judicata become inescapable based on their failure to challenge the bankruptcy court's confirmation order. And I think there is no doubt that a bankruptcy court has jurisdiction to approve a debtor's plan of reorganization. That's core bankruptcy jurisdiction. None of the parties as defined by you have attempted to use the remedy from paragraphs 39 and 40. That is correct, Your Honor, nor would we need to because the triggering event would be a rejection by this court or by another court of this class settlement. This is really a boilerplate paragraph. It's designed to prevent a class settlement from becoming an individual settlement binding on these individual parties. There's been a class settlement negotiated. If the class settlement were to fail for whatever reason, we don't want the individual parties who negotiated that settlement to necessarily be bound by it. So it's a boilerplate provision found in most class settlement agreements to make sure that if a court rejects the class settlement agreement, the parties, the individual parties who negotiated that settlement aren't bound by it. It's a class settlement, not an individual settlement. This is a mechanical provision designed to prevent that inadvertent transformation of a class settlement into an individual settlement. Even at that point, it's your position that that would not include the pillar objective? It would not, Your Honor. There is no carve-out. I mean, just take a look at the plain language of these provisions, Your Honors. There is no carve-out, and there's a clear definition of parties that these appellants are not within. And I think once we take paragraph 39, paragraph 40 off the table, this becomes a straightforward application of this Court's well-established precedence on mootness. And indeed, if you take a look at the appellant's reply brief, I think equitable mootness is effectively conceded on the face of that reply brief. This Court has identified three elements to equitable mootness. They concede explicitly two of those three elements, and they concede the third element implicitly. The first element is that no stay was thought of the bankruptcy court's confirmation of the plan. No appeal was filed. No stay was sought. No stay was obtained. That's uncontested. They concede that. That's element one of equitable mootness. Element two, substantial consummation. Again, it's admitted on the face of the reply brief, and even if it weren't, it's been almost a year, 10 months, and a lot has happened, tens of millions of dollars' worth of transactions. This successful reorganization that benefits a class of over 20,000 small investors is proceeding successfully. The third element, and the only element on which these PLR appellants contest, is whether the relief requested would affect either the rights of the parties not before the court or the success of the plan. Well, I think quite obviously, when you're dealing with a class of over 20,000 people and the remedy requested is decertification of that class, that would affect the rights of a lot of people who are not before this Court today. Respond to his claim that $2 million apparently is at hand and can be repaid and it's not going to affect the 20,000 class members. We certainly dispute that. We strenuously dispute that. I'm surprised you do, so tell us why. There are a couple of reasons, Judge Barksdale. First of all, it's not $2 million cash in hand. It's a $2 million death benefit from fractional interest in life insurance policies that haven't matured yet. The people covered by the policy haven't died yet, and until they do, that death benefit isn't paid. So it is not cash in hand. It is not sitting in some bank account ready to be returned. But more importantly, this is a question about ownership, a unified, singular definition of ownership, and that claim was compromised, that this is not a contested class settlement, or a class certification, this is a class settlement where the party's class counsel and my client compromised on this 95-5 formula. And as in any settlement, the claims are extinguished. To the extent the personal property at issue here is the claims, it's no different than any class settlement ever. People give up claims to settle cases, including class actions. I think that's just axiomatic. And as to this element that other people would be impacted, look at the prayer, the conclusion. I'm just a Texas litigator. We say prayer rather than conclusion, where the relief they seek is the wholesale decertification, reversal, and remand of this certified settlement class. That, by definition, would affect other people. It would affect the other class members, and it would open Pandora's box, because as both the bankruptcy court, Judge Nelms, and Judge McBride pointed out, this ownership issue was a critical issue, a threshold issue, the linchpin issue for this settlement. If the ownership issue was resolved in LPI's favor, that LPI owned these policies, then these 20,000-plus class members, most of whom are small investors, individual investors, mom-and-pop investors, if you will, would be left as unsecured creditors waiting in line to get pennies on the dollar. If, conversely, the ownership issue had been resolved in favor of the individual investors, then there would have been huge servicing issues. Many of these policies, the premiums would not have been paid. It would have been administrative chaos. This settlement, and it's a good settlement, took into account both of those concerns, as expressed by Judge Nelms and Judge McBride, and it compromised them with a formula that allows maximum recovery for these 20,000-plus individual investors while preventing administrative chaos and preventing the loss of these policies. But some still have to keep paying the premiums. Yes, that's exactly right, Your Honor, and the premiums are being paid via that 5 percent mechanism. That's part of the value the 5 percent provides. It sets up the trust to service these policies. But I just think it's incredible that there would be any dispute that asking to set aside a class settlement doesn't affect the class members. It's almost a tautology. Of course it affects the class members. That's all three elements of equitable mootness. They're easily satisfied here. Moving on to res judicata, the three elements identified by this Court in Republic Supply, which counsel cited in other cases, are, one, same parties. There's no dispute that the PLR objectors came forward in the bankruptcy confirmation proceeding and participated in that bankruptcy confirmation proceeding, raised these objections in the confirmation proceeding. Two, the second element is court of competent jurisdiction. As I alluded to earlier, I don't believe there's any good-faith dispute that a bankruptcy court has jurisdiction to confirm a debtor's plan of reorganization. So that court of competent jurisdiction element is also easily satisfied. The third element, final judgment disposing of the cause of action, well, these causes of action that they seek to revive in this Court today were explicitly and extinguished on the face of the plan confirmation order. The plan confirmation order answers the question as to who owns these policies. And it answers it based upon the settlement that was confirmed by Judge McBride. That's why it's the linchpin of the settlement. So it could not be more explicit or specific in terms of extinguishing these claims they seek to revive. The bankruptcy court clearly intended the plan confirmation order to be the last word on the ownership issue. And it is, because it was not appealed and it was not stayed. So that, I think, easily satisfies all three elements of res judicata. I don't think there's any need to reach the merits of the 23b2 argument given equitable mootness, legal mootness, and res judicata. But if this Court does wish to address the b2 argument, this is a classic b2 case. It's a declaration of ownership. No money is changing hands. There's no pool of damages. There is a declaration of ownership in one subclass and a declaration of rescission in the other subclass. No monetary damages and certainly no individualized, fact-specific determination of individual damages. Any monetary relief is simply incidental to and flows from the determination of ownership. The ownership class sought and obtained a declaration of their beneficial ownership rights. That's the 95-5 split. The rescission class sought and obtained a declaration that they were entitled to rescission. Now, I note none of these objectors fall into that rescission class. So I think Mr. Bruno, on behalf of the class, may address that momentarily, but I don't even think that's properly before the Court. The same relief for all class members based on the same injury, the sale of, by prepetition LPI, of these securities, of these fractional interests in life insurance policies. Same injury to all class members, no individualized computation of damages, no damages at all, and to the extent that there's monetary relief, it could be awarded by a computer. It's a mechanical operation based on how much was invested. This Court has identified three 23B2 factors. Maldonado is one case in which those factors can be found. Class members all injured the same way. I think we meet that standard here. Second, the injunctive relief predominates over monetary damages. Well, here there is only non-monetary relief, declaratory relief, injunctive relief. And three, the injunctive relief must be specific. I would suggest it's hard to be more specific than a declaration of ownership or a declaration of rescission. That's pretty straightforward. It's a 95-5 split on the ownership issue. That's one declaration. The other declaration is that there's a right of rescission. That's about as specific as you can get, in my view. So, again, I think if the Court wants to reach the 23B2 analysis, and I don't think it should based on the threshold issues of mootness and res judicata we've identified, I think we easily satisfy the B2 analysis. I'm a bit confused by the personal property argument that counsel has raised. Under Texas law, under law as I know it, claims are personal property. Every settlement involves the divestiture of claims. Every settlement in that sense involves taking claims away from the settling class members. Unless the Court has any questions, I will yield the floor to the other appellee today, Mr. Clint Bruno, on behalf of the settlement class. Thank you, sir. Mr. Steve South. I'm sorry. Clint Bruno. You have five minutes. Good morning, Your Honors, and may it please the Court. Clint Bruno on behalf of the class, seated at council table with me is Mr. Keith Langston. I'd like to quickly address two issues. One, the fairness, the inherent fairness of the ownership class settlement in this case, and two, the standing of appellant to challenge the rescission class. First of all, most class action lawyers stand before the Court trying to justify a class action settlement and telling the judges that pennies on the dollar is sufficient for whatever reasons, whatever strategic litigation reasons that they might have had to sacrifice their claims. In this case, the settlements being objected to, and I'm standing before you, explaining why giving up pennies on the dollar for the investors is a bad deal. It just inherently doesn't make any sense, their argument. In this case, not only can these investors get their money back, they're going to make a profit. The profit isn't going to be as great as they might have thought it was going to be because of the terms of the bankruptcy. But when you're faced with a class action case in a bankruptcy proceeding with a Chapter 11 defendant, getting 95% of your potential profit, what you thought you were going to get when you made this investment in the first place, seems like a very good result. These investors and the objectors are all in the same boat. Everyone won. Everyone had the declaration entered that they were the owners of this security that they invested in. There's no ambiguity there whatsoever. The problem that the objectors have with this settlement is that they have to give up 5% of their interest. That 5% isn't a real 5%, as counsel alluded to. It's simply an interest that goes into the position holder trust that they later will be able to cash out for some percentage less than 5%. The two rules that they have suggested here are nonsensical. I don't totally understand them. One is, as Mr. Cradoville alluded to, they're suggesting that you can't sacrifice, sort of objectively, you can't sacrifice a personal property claim in a B-2 settlement. We've cited a couple of cases in our papers. The Berry case out of the Fourth Circuit, where the class gave up a FCRA statutory claim, and the McDonough case out of the Third Circuit, where the class gave up ERISA claims. Both were B-2 settlements. In the subjective context relevant to this case, what they're asking to do is even more preposterous. They're suggesting that they should be allowed to profit from these investments, to use the 5% that all of the other investors are contributing, so that this reorganized debtor can do things like pay premiums, hire professionals, all of the things that are necessary so that they can profit from their investment, but they don't want to pay it. They want the other folks to pay the freight so that they can make their profit on their investment. There was no suggestion in any of the papers, and there couldn't be that there was any collusion or anything like that involved with this settlement. It was extensively vetted through both the bankruptcy and the district court. All of the different constituencies in the bankruptcy were represented by counsel. In fact, the bankruptcy judge required two competing plan proponents to also submit class action settlement proposals as part of their bids. Turning quickly to the issue of standing, in order to satisfy the requirements for standing, a party has to show that it was directly and adversely affected by whatever the result is that they're challenging. In this case, the objectors did not elect rescission. They are not part of the rescission class, except to the extent that, like everyone else, the court declared that they have a right under the Texas Securities Act to rescind. They did not elect that option. So, therefore, they are not aggrieved in any way. And all that they would do in challenging the rescission claim is take away that right for the other investors. I see my time has run. Thank you for your time. Mr. Perry. Thank you, Your Honors. To approve the 23B2 class action settlement in this case is to allow any business that holds legal title for the benefit of others to use those assets to their own advantage. The value of those assets, particularly financial institutions, often dwarfs the value of the financial institution itself, and that's exactly what happened in this case. Life Partners had processed over $1.6 billion in life settlement claims without putting any of those amounts on its books in its entire history, and only once the bankruptcy was declared did the bankruptcy trustee attempt to claim those assets for itself. We are here today because my clients contested ownership of these assets. They contested that they are not even supposed to be part of the bankruptcy estate. The trial court refused to decide that issue and instead forced a mandatory non-opt-out class action settlement on us that divested us of 5% of our interest, and that is an improper use of a mandatory class action per se. They also required us to assign individual tort and contract claims to the bankruptcy estate, and that is a per se violation of the Rule 23b-2 standard. As the Court, as Judge Clement said in the McManus case, the class members have potentially received a poor substitute for individual money damages. This is a — this is such a — this is as misused a B-2 class as one can imagine. The equitable mootness standard, this Court has never applied equitable mootness in order to divest an appellant of a due process or a takings argument. The Supreme Court predicted this issue in Wal-Mart v. Dukes, where it said that due process was at issue in cases like this. Moreover, the Supreme Court predicted this argument at the very end of Wal-Mart, where it said that the Rules Enabling Act forbids using Rule 23 to abridge, enlarge, or modify any substantive right. They have used the Rule 23b-2 class to abridge our due process rights, abridge our right to contest the bankruptcy court's jurisdiction, and they are depriving us of our property in violation of 23b-2. We ask the Court to reverse the class action certification and render and return it to the trial court for relief in accordance with the agreement. Thank you. Thank you, Mr. Perry.